**SAC AND FOX NATION OF MISSOURI, Iowa Tribe of Kansas and Nebraska, Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas, Plaintiffs,**

**v.**

**John D. LAFAVER, Secretary Kansas Department of Revenue, Defendant.**

**No. Civ.A. 95–4152–DES.**

United States District Court, D. Kansas.

Dec. 17, 1998.

**1300**

Mark S. Gunnison, Stephen D. McGiffert, Payne & Jones, Chtd., Overland Park, KS, John R Shordike, Patricia Prochaska, Berkeley, CA, Paul Alexander, Alexander & Karshmer, Washington, DC, for Sac and Fox Nation of Missouri, Iowa Tribe of Kansas & Nebraska, plaintiffs.

Pedro L. Irigonegaray, Robert V. Eye, Irigonegaray & Associates, Topeka, KS, Mario Gonzalez, Horton, KS, for Kickapoo Tribe of Indians, plaintiff.

Amy Weller Liebau, Hinkle, Eberhart & Elkouri, L.L.C., Wichita, KS, John Michael Hale, Jason L. Reed, Kansas Department of Revenue, Bureau of Legal Services, Topeka, KS, for John D. Lafaver, defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant's Motion for Summary Judgment (Doc. 93) and plaintiffs' Motion for Summary Judgment (Doc. 94).

### I. BACKGROUND

The basic facts in this case are not in dispute. The plaintiffs are three federally-recognized Indian Tribes: the Sac and Fox Nation of Missouri ("Sac and Fox"); the Iowa Tribe of Kansas and Nebraska ("Iowa"); and the Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas ("Kickapoo") (collectively the "Tribes"). Sac and Fox is the beneficial owner of and exercises jurisdiction over the Sac and Fox Indian Reservation, as well as land located at Reserve, Kansas, which land is held in trust for Sac and Fox by the United States of America. Iowa is the beneficial owner of and exercises jurisdiction over the Iowa Tribe of Kansas and Nebraska Indian Reservation. A part of the Iowa land is held in trust for Iowa by the United States of America. Kickapoo is the beneficial owner of and exercises jurisdiction over land within the Kickapoo Nation's federally recognized boundaries, which land is held in trust for Kickapoo by the United States of America. All three plaintiffs operate retail gasoline stations on their reservations, and assess tribal taxes on their motor-vehicle fuel sales.

On May 7, 1995, the Kansas Legislature passed Senate Bill 88 ("SB 88"), which is codified at Kan.Stat.Ann. § 79–3408g(d)(2).[1] Section 79–3408g(d)(2) provides as follows:

> No tax is hereby imposed upon or with respect to the following transactions: . . . (2) The sale or delivery of motor-vehicle fuel or special fuel to the United States of America and such of its agencies as are now or hereafter exempt by law from liability to state taxation, except that this exemption shall not be allowed if the sale or delivery of motor-vehicle fuel or special fuel is to a retail dealer located on an Indian reservation in the state and such motor-vehicle fuel or special fuel is sold or delivered to a nonmember of such reservation.

---

1. Senate Bill 421, which was passed by the Kansas Legislature in 1998, repealed Kan.Stat.Ann. § 79–3408g. However, as this statute was applicable during a portion of the time relevant to this case, it will still be discussed.

On May 17, 1995, the legislature passed House Bill 2161 ("HB 2161"), which is codified at Kan.Stat.Ann. § 79–3408(d)(2). Section 79–3408(d)(2) contains the exemption language of section 79–3408g(d)(2), but does not contain the exception for deliveries to nonmembers of Indian reservations. Section 79–3408(d)(2) reads as follows: "No tax is hereby imposed upon or with respect to the following transactions: ... (2) The sale or delivery of motor-vehicle fuel or special fuel to the United States of America and such of its agencies as are now or hereafter exempt by law from liability to state taxation."

On September 6, 1995, the Kansas Department of Revenue ("DOR") announced its intention to begin collecting tax on motor-vehicle fuel sales from distributors to plaintiffs. Plaintiffs challenged the imposition of this tax and alleged that the Kansas statutes purporting to subject the Tribes to the state's motor-vehicle fuel tax are unconstitutional and preempted by federal law. On October 5, 1995, this court entered a temporary restraining order enjoining and restraining DOR from applying and enforcing the collection of any motor-vehicle fuel tax on tribal retail motor-vehicle fuel sales on Indian lands, including sales from distributors to plaintiffs, as outlined in Senate Bill No. 88, signed on May 7, 1995, and House Bill No. 2161, signed on May 17, 1995, and implemented on September 6, 1995. The court further ordered that the temporary restraining order would be effective until such time as the court had ruled on plaintiffs' motion for preliminary injunction. The court ordered a preliminary injunction on October 30, 1996.

## II. *SUMMARY JUDGEMENT STANDARD*

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. 2548.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., U.S. v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The

court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## III. ANALYSIS

### A. Standing

■ Under the United States Constitution, federal courts only have jurisdiction to hear a matter if there is a "case or controversy." U.S. Const. art. III, § 2. One element of the case or controversy requirement is that the plaintiff must establish that they have standing to sue. *Raines v. Byrd,* 521 U.S. 811, 117 S.Ct. 2312, 2317, 138 L.Ed.2d 849 (1997). The standing inquiry focuses on whether the plaintiffs are the proper parties to bring this suit. *Id.* In order to meet the standing requirements of Article III, " '[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.' " *Id.* (quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).

■ The defendant claims that the plaintiffs cannot meet the threshold requirement of standing to maintain this suit. In support of this contention, the defendant states that the distributors of the motor-vehicle fuel are the proper party because they are responsible for the payment of the taxes to the state.

■ Standing contains three requirements. First, there must be an "injury in fact"—a harm suffered by the plaintiffs that is "concrete" and "actual or imminent." The second requirement is causation—a traceable connection between the plaintiffs' injuries and the defendant's actions. Finally, there must be redressability,—or a likelihood that the requested relief will redress the alleged injury. *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 1016–17, 140 L.Ed.2d 210 (1998).

The court finds that the plaintiffs in this action meet the constitutional requirements for standing. The court has no doubt that the tax in question will be passed along to the tribal retailers if it is paid by the distributors. As discussed below, this is specifically allowed by the laws in question. The plaintiffs would then be left with two choices. First, the tribe could pass the tax along to the consumer, which would raise the price of fuel and undoubtedly lower sales. The other option would be to absorb the tax themselves in an effort to keep sales up. In either case, the plaintiffs would suffer a real economic loss if the tax is charged to the distributor. This satisfies the first requirement of "injury in fact." There is no causation concern in this case. Clearly it ·is the tax in question that would cause the plaintiffs' injuries. Finally, the court finds that by granting a permanent injunction and finding the tax in question unenforceable, the court can adequately redress the plaintiffs' injuries. Having met the three requisite showings for standing, the court finds that this case is properly brought by the plaintiffs and should proceed on its merits.

### B. Tax Compacts

■ The plaintiffs claim that the tax in question is barred by tax compacts entered into by the respective tribes and the state of Kansas. In 1991 and 1992, the respective tribal counsel, the governor of the state of Kansas, and the secretary of the Kansas Department of Revenue entered into these compacts. According to the terms of the compacts, the state agreed not to tax certain transactions which involved the tribes, provided that the tribes placed a tax on the consumers. The plaintiffs allege that these compacts prohibit the state from taxing the fuel purchased by the tribes for resale. The defendant claims that, because these compacts were never approved or ratified by the Kansas Legislature, they have no legal effect.

As an initial note, these compacts, by their own language, were effective only until 1996, if at all. No compacts have been entered into by the tribes and the state since 1996. Therefore, this argument only pertains to the portion of the taxes in question which relate to dates prior to 1996.

The leading case in Kansas concerning the governor's ability to bind the state under a compact is *State ex rel. Stephan v.*

*Finney,* 251 Kan. 559, 836 P.2d 1169 (1992). In *Finney,* the Kansas Supreme Court invalidated gaming compacts entered into by then Governor Finney and certain Indian tribes located in Kansas. The court held that the compacts in question would have created substantive changes in the state's government by creating a new agency and substantively changing the state law. This, held the court, was the function of the state legislature, not the governor.

The plaintiffs claim that the *Finney* case is not controlling because it is distinguishable. One of the major concerns the Kansas Supreme Court had with the compacts at issue in *Finney* was that the compacts would create a new set of duties and responsibilities on a state agency. Clearly the *Finney* case is distinguishable on this point. The compacts in this case would have no impact on the duties or functions of any existing state agency and would not have the effect of creating a new state agency. Therefore, the court's holding that creating such additional duties on a state agency is beyond the authority of the governor does not provide any guidance when the governor does not undertake such a task, as is the case presently before the court. Another problem discussed by the court in *Finney* was that the compacts would have made substantive changes to the state laws. While the plaintiffs claim that the compacts in this case would not alter state law, the court disagrees.

Although the current compacts would not have created any new government agencies in the state of Kansas, the compacts would have made a substantive change to state law. If the compacts were to be applied as is requested by the plaintiffs in this case, the compacts would have created an exemption to the existing state tax laws. The creation of tax exemptions is function for the state legislature, not the governor. The legislature clearly considered whether certain transactions involving motor-vehicle fuel should be given a tax exemption, as evidenced by the fact that many are included in the tax statutes. To allow the governor to create new tax exemptions without the approval of the state legislature would be a violation of the Kansas Constitution. As the Kansas Supreme Court held in *Finney,* this court holds that although the governor of

Kansas had the authority to negotiate the compacts in question with the Indian tribes, only the legislature has the authority to make those compacts binding. Therefore, the tax compacts at issue in this case are of no legal effect.

**C. Statutory Exemptions**

■ The plaintiffs discuss at length in their briefs that the statutes, upon which the state of Kansas is relying upon to collect the tax, exempt transactions involving Indian tribes. According to the plaintiffs, the two different provisions of Kan.Stat.Ann. § 79–3408 justify an exemption to transactions involving Indian tribes. First, the plaintiffs claim that the provision found in subsection (d)(2) of § 79–3408 allows such an exemption. According to the plaintiffs, subsection (d)(2) should be read as it appears in § 79–3408 and not as it appears in § 79–3408g. The court agrees.

This issue has become extremely confusing because the Kansas Statutes contain two versions of the same statute. Section 79–3408 was amended twice in 1995. Rather than containing only the controlling version of the statute, which the court finds is clearly the version created by House Bill 2161 as it was the latter bill to be passed into law, the bound volume of the Kansas Statutes Annotated contains both versions. The controlling version of the statute provides an exemption from the fuel tax laws on any transactions involving "[t]he sale or delivery of motor-vehicle fuel or special fuel to the United States of America and such of its agencies as are now or hereafter exempt by law from liability to state taxation." Kan.Stat.Ann. § 79–3408(d)(2) (1997) What is not contained in this version is the following language, "except that this exemption shall not be allowed if the sale or delivery of motor-vehicle fuel or special fuel is to a retail dealer located on an Indian reservation in the state and such motor-vehicle fuel or special fuel is sold or delivered to a nonmember of such reservation." Kan.Stat.Ann. § 79–3408g(d)(2) (1997).

The court finds that this language is immaterial to the plaintiffs' case. The exemption at issue in § 79–3408(d)(2) applies to the United States of America and its agencies.

The court is unaware of any legal authority which indicates that federally recognized Indian tribes are agencies of the United States. Plaintiffs have indicated that it was this exemption that was relied upon by the state of Kansas to exempt transactions involving tribal retailers in the past. However, the fact that the state of Kansas had erroneously interpreted the statute to provide an exemption in the past is not sufficient to require them to do so now. Kan.Stat.Ann. § 79–3408(d)(2) does not exempt from the motor-vehicle fuel tax those transactions involving retailers located on Indian reservations.

■ The plaintiffs also claim that Kan. Stat.Ann. § 79–3408(d)(1) provides an exemption to the motor-vehicle fuel taxes in transactions involving tribal retailers. The section states that no tax is imposed upon transactions involving "[t]he sale or delivery of motor-vehicle fuel or special fuel for export from the state of Kansas to any other state or territory or to any foreign country." Kan.Stat.Ann. § 79–3408(d)(1) (1997).

The question which has been debated at length by both parties is whether the Indian reservations located within the borders of the state of Kansas should be considered another "state or territory" as is provided for in § 79–3408(d)(1). The plaintiffs base their argument in the Act for Admission of Kansas Into the Union and the Organic Act. Both of these acts make it very clear to the court that the Indian reservations are not to be considered part of the state of Kansas in any way. The plain language of both acts states that "all such territory shall be excepted out of the boundaries, and constitute no part of the territory [state] of Kansas."

The defendant claims that the language contained in § 79–3408(d)(1) was not meant to exclude transactions involving Indian tribes. The statute exempts any fuel transactions where the fuel is exported "to any other state or territory or to any foreign country." From this reading, the court can only conclude that the intent of the Kansas Legislature was to exempt any transaction where fuel was to be sold outside the boundaries of the state of Kansas. As the Act for Admission of Kansas into the Union and the Organic Act both clearly exclude the Indian reservations from the boundaries of the state of Kansas, it is only reasonable that § 79–

3408(d)(1) provides for an exemption to the transactions involved in this case where fuel is sold to tribal retailers on the recognized reservations.

Based on this ruling, the court finds that the plaintiff's request for a permanent injunction prohibiting the state of Kansas from taxing any and all transactions involving the sale of motor-vehicle fuel to retailers located on reservations must be granted. Although the court finds that the injunction should be granted based upon the exemptions contained in the Kansas statutes, the court will also discuss whether federal law permits the application of the tax, as well.

## D. Legal Incidence of the Tax

■ The first step in determining whether federal law prohibits Kansas from imposing the tax in question is to determine where the legal incidence of the tax falls. *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 458, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995). If the legal incidence of the tax falls on the tribal retailers, the state will be prohibited from assessing the taxes. *Id.* at 459, 115 S.Ct. 2214. However, if the legal incidence of a tax falls on non-tribal members, then there is no categorical bar to the tax. *Id.*

In *Chickasaw Nation*, the Court found that the legal incidence of the fuel tax in question fell on the tribes, and thus held that Oklahoma could not enforce the tax. The defendant argues that the tax in question in this case is substantially different from that imposed in the *Chickasaw Nation* case and that the legal incidence of the tax is on the distributors of motor-vehicle fuels, not on the tribal retailers. The plaintiff contends that, although the two tax statutes are different in some ways, certain key elements remain in the Kansas tax which have the effect of placing the legal incidence of the tax on the tribes. The court agrees with the defendant and holds that the tax in question is legally imposed on the distributors, not on the retailers.

### 1. Status Prior to 1998 Amendments

In order to determine who the legal incidence of the tax is imposed upon, the court

will compare some of the key provisions discussed by both the United States Supreme Court and the Tenth Circuit Court of Appeals in reaching their determination that Oklahoma's tax was legally imposed on the tribes with the Kansas law in question. In *Chickasaw Nation*, the Oklahoma tax concerned motor-vehicle fuel taxes "remitted by a distributor **on behalf of a licensed retailer**." *Chickasaw Nation v. State of Oklahoma*, 31 F.3d 964, 971 (1994) (emphasis added). The Kansas law contains no provision which states that the distributor is remitting the tax "on behalf of a licensed retailer." In *Chickasaw Nation*, the Tenth Circuit also notes that the distributor is allowed a credit for any taxes that are uncollectible from the retailer. *Id.* Although the Kansas law does allow distributors to deduct a 2.5 percent allowance from the amount of motor-vehicle fuel subject to taxes, it is apparent from the statute that this allowance is for losses incurred in actually handling the fuel, such as spillage, and not losses as a result of not collecting taxes from retailers as was the case in *Chickasaw Nation*.

■ The tribes argue that the provision in the Kansas legislation which allows distributors to pass the amount of the tax along to the tribes as part of the purchase price has the effect of imposing the legal incidence of the tax on the retailers. Initially, the court wishes to point out that this provision is not mandatory on the distributors. No distributor is required to pass the amount of tax along to the retailer. The fact that the language appears unnecessary due to the fact that the distributors would be able to pass the cost along to retailers even without the statutory authorization in no way affects the plain language of the statute. Distributors have the option of passing the tax along if they wish, but are in no way required to do so by the statute. Contrary to plaintiff's claims, this provision cannot reasonably be read to require distributors to "collect and remit" the taxes in question on behalf of the retailer.

The fact that the amount of the tax may ultimately be funneled down to the tribal retailers has no effect on the legal incidence of the tax. In the Tenth Circuit's opinion in *Chickasaw Nation*, the legal incidence of the tax did not fall on the tribal retailer because the amount of the tax would ultimately be passed along to the consumer. In response to this argument, the court stated:

> While it may well be that the tax is ultimately passed on to the consumer at the pump, the question is whether the statutes in question legally impose the taxes on the Tribe. The question of who bears the ultimate economic burden of the tax is distinct from the question of on whom the tax has been imposed.

*Id.* at 972.

■ Plaintiffs claim that several other provisions of the Kansas tax statutes impose the legal incidence of the taxes on the retailer. Plaintiffs claim that the provision of Kan.Stat.Ann. § 79–3408(a) which states that the tax is imposed on all fuel which is "used, sold, or delivered in this state for any purpose whatsoever" is similar to a provision in the Oklahoma tax which was relied upon by the Court to invalidate the Oklahoma tax. The court disagrees. The discussion about the similar provision in the Oklahoma tax by the Court in *Chickasaw Nation* was centered around the issue of whether the retailer could be considered a mere collection agent for the consumer just as the distributor was a collection agent for the retailer. That analysis is irrelevant here because the court has already determined that, under the Kansas law, the distributor is not acting as a collection agent of the retailer, thus making a determination of whether the retailer was, in turn, simply a collection agent for the consumer unnecessary.

■ Another provision of the Kansas law which Plaintiff claims is an indication that the legal incidence of the tax falls on the Tribal retailers is the exemption from taxes on sales between distributors, Kan.Stat.Ann. § 79–3408(d)(5). In *Chickasaw Nation*, the Court construed a similar provision of the Oklahoma tax to indicate that the legal incidence fell on the retailer not the distributor. However, after reading § 79–3408 as a whole, the court comes to a different conclusion in regard to the Kansas exemption. Section 79–3408(c) states "[s]uch tax shall be paid but once." If sales between distributors were not given an exemption from the fuel tax, each transfer of the fuel between distrib-

**1306**

utors would result in a tax assessment for the amount of fuel transferred. This would clearly lead to multiple taxes on the same fuel as it is passed from distributor to distributor and eventually to a retailer. The court finds that the provision of the Kansas tax which exempts sales between distributors serves the purpose of preventing multiple taxation, and not imposing the legal incidence of the tax on the retailer.

■ The plaintiffs further point to several provisions of the Kansas Session Laws which they claim places the legal incidence of the tax on the retailer. For example, in Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Summary Judgment, the plaintiffs quote the following passage from the Kansas Session Laws:

> It shall be unlawful for any ... retailer to: (3) fail, neglect or refuse to pay the director within the time required by the act, any tax, taxes, interest or penalties for which such person is liable under the provisions of this act.

1995 Kan.Sess.Laws Ch. 262, § 11. The eliminated portion of this bill states that it applies to any "distributor, importer, exporter, manufacturer, retailer, user, carrier, transporter or any other person." *Id.* The full text of the section also lists seventeen other actions which are made illegal by the bill. Clearly, some of these eighteen illegal acts pertain to only certain groups enumerated in the bill. The language of subsection (3), on which the plaintiffs rely, does not, in any way, impose a tax liability on the retailer. The section states that it is unlawful for any person to "fail, neglect or refuse to pay the director, within the time required by this act, any tax, taxes, interest or penalties *for which such person is liable under the provisions of this act.*" *Id.* (Emphasis added). This provision does not create or impose any tax liability on any person or entity. Rather, it makes it a criminal offense not to pay taxes that are required under the act. Therefore, unless some other provision in the act places a direct tax burden on the retailer, this section does not apply to retailers.

■ The next section of the Kansas law which the plaintiffs claim imposes the fuel tax on the retailer is quoted by the plaintiffs as follows:

> If any ... retailer ... shall fail, neglect, or refuse to render any report required by the provisions of this act within the period specified, or if the director is not satisfied of the correctness of any report or tax payment made by any ... retailer ... the director is hereby authorized and empowered to determine ... the true amount of taxes, penalties, and interest due the state from such ... retailer.... Promptly after making such determination the director shall send ... a statement to such ... retailer and shall proceed to collect the amount so determined.

1995 Kan.Sess.Laws Ch. 262, § 33. When read in context, this provision does not impose any tax liability on the retailers. The section applies to any "distributor, manufacturer, importer, exporter or retailer." *Id.* This provision does not impose a tax liability on anyone. It simply gives the director the ability to use any information in the director's possession to determine the correct amount of tax that is owing on the sale of motor-vehicle fuels when an improper amount has been paid. Because no other provision in the act requires the retailer to pay these taxes, the portion pertaining to taxes in this section of the bill does not apply to retailers. However, retailers are required to file reports on the amount of fuel received, thus explaining the inclusion of retailers in this section.

■ Plaintiffs quote a third section of the Kansas Session Laws which, they claim, imposes the Kansas fuel taxes on the retailer. This section is quoted by the plaintiffs as follows:

> Whenever any ... retailer ... is 10 days delinquent in the making of any such report or the payment of any such tax, penalty, or interest ... the director upon conducting a hearing as provided in this section and upon finding to the director's satisfaction upon such hearing, that such retailer ... has been delinquent, or has violated provisions of this act, may revoke any or all licenses issued to such ... retailer.

1995 Kan.Sess.Laws Ch. 262, § 29. As with the other sections of this bill cited by the plaintiffs, the court finds that, despite the

plaintiffs' artful method of selectively quoting the law so as to take the quote completely out of context, this section does not impose the tax in question on retailers. The section states that when any "distributor, manufacturer, importer, exporter or retailer" fails to either pay taxes that are required to be paid, or to file required reports, the director can repeal their licenses. It does not require anyone to pay taxes. Instead, it gives the director power to enforce the tax scheme. As has been stated above, and clearly provided in the Kansas laws, the retailers are required to make reports concerning the amount of fuel they receive, but not to pay or remit any taxes. Therefore, this section of the law is only applicable to retailers insomuch as it relates to the failure to make the required reports. It clearly does not impose the legal incidence of any taxes on the retailer.

## 2. After 1998 Amendments

■ In 1998, the Kansas Legislature amended the Kansas tax laws in an effort to clarify where the legal incidence of the motor-vehicle fuel tax fell. These amendments remove most of the language concerning retailers complained of by the plaintiffs in the above section. In addition, the new version of Kan.Stat.Ann. § 79–3408 states:

> Unless otherwise specified in K.S.A. 79–3408c, and amendments thereto, the incidence of this tax is imposed on the distributor of the first receipt of the motor fuel. . . .

1997 Kan.Sess.Laws Ch. 421, § 2.

The court has found nothing in the Kansas tax laws, either prior to or after the 1998 amendments, which places the legal incidence of this tax on the retailer. Rather, the statutes are extremely clear in providing that the tax in question is imposed upon the distributor. This, however, does not end the analysis of whether the tax in question should be upheld. Even if the legal incidence of the tax does not fall on the tribal retailers, the court can still invalidate the tax upon a finding that federal and tribal interests in not having the tax enforced outweighs the interests of the state of Kansas in collecting such taxes. See Chickasaw Nation, 515 U.S. at 459, 115 S.Ct. 2214 (holding that a balancing test is used to determine the validity of the tax when the legal incidence of the tax does not fall on the tribe).

## F. Balancing of Federal, Tribal and State Interests

■ The first step in analyzing the balancing test is determining what impact would be sustained by the state of Kansas if the tax in question is invalidated. As an initial point, the court wishes to stress that Kansas has never in the past taxed motor-vehicle fuel transactions involving the Indian tribes. A ruling invalidating the tax would not take money out of the state coffers that had been relied upon in the past. Instead, it would only result in a prohibition on collecting new taxes. In addition, although no evidence is currently before the court concerning what percentage of motor-vehicle fuel sales involve tribal retailers, it is obvious to the court that such transactions make up a very small part of the transactions which would fall under the taxing statute. Invalidating the tax as it applies to transactions involving tribal retailers would not undermine the taxing scheme set up by the tax laws. The state of Kansas would clearly not suffer a great deal of harm if it were enjoined from collecting the tax in question.

The second step in the balancing test would be to determine the impact of the tax on the tribal retailers. It is clear to the court that the each of the plaintiffs in this case rely heavily on the sale of motor-vehicle fuel on their reservations for income. The court has no doubt that the distributors who provide the fuel to the tribal retailers will pass the price of the tax on as a portion of the price. In fact, this practice is specifically authorized in the legislation. See, Kan.Stat. Ann. § 79–3409 (1997). This will leave the tribal retailers with two options: continue to sell the motor-vehicle fuel at the same cost and absorb the cost of the tax that is passed on to them, or pass the tax on to the consumer by increasing prices, which will in all likelihood reduce sales. In either case, the tax will have a real and direct impact on the tribes' incomes. The court finds that the balancing test discussed in Chickasaw Nation shows that the tax must be invalidated. The impact the loss of revenue would have on

tribal functions would be much greater than the impact on the state of Kansas. Tribal autonomy is an important concern not only for the tribes, but for the federal government as well. Without sufficient revenue, tribal autonomy would clearly be compromised. For this reason, the court finds that the tax in question must be invalidated as it relates to transactions involving tribal retailers.

## IV. CONCLUSION

Having examined the motions and briefs filed in this case, the court makes the following findings and conclusions. The court finds that the plaintiffs have met the constitutional requirement of standing to bring this lawsuit. The court also finds that the tax compacts entered into between the governor of the state of Kansas and the plaintiffs are of no legal effect. However, Kan. Stat. Ann. § 79–3408(d)(1) provides an exemption from taxation for transactions where motor-vehicle fuel is sold to retailers located on Indian reservations.

As a separate basis for granting the injunction, the court finds that although the legal incidence of the tax in question falls upon the distributors of the motor-vehicle fuel, and not on the tribal retailers, the interests of the plaintiffs in not having the taxes collected far outweighs the interests of the state of Kansas in collecting the tax on transactions involving Indian tribes.

**IT IS THEREFORE BY THIS COURT DECLARED** that Kan.Stat.Ann. § 79–3408 is invalid insomuch as it applies to the collection of taxes on any and all transactions involving the sale of motor-vehicle fuels to all federally recognized Indian tribes which in turn sell the fuel as a retailer on reservations and trust land located within the state of Kansas.

**IT IS THEREFORE BY THIS COURT ORDERED** that plaintiffs' Motion for Summary Judgment (Doc. 94) is granted and defendant's Motion for Summary Judgment (Doc. 93) is denied.

**IT IS FURTHER ORDERED** that the State of Kansas is permanently enjoined from enforcing Kan.Stat.Ann. § 79–3408 and collecting taxes from distributors on the sale of motor-vehicle fuel in all transactions involving the federally recognized Indian tribes who are plaintiffs to this action.