**SAC AND FOX NATION OF MISSOURI; Iowa Tribe of Kansas and Nebraska; Kickapoo Tribe of Indians, of the Kickapoo Reservation in Kansas, Plaintiffs,**

v.

**Stephen RICHARDS,[1] Secretary, Kansas Department of Revenue, Defendant.**

No. 95–4152–DES.

United States District Court, D. Kansas.

Aug. 21, 2001.

---

1. In accordance with Rule 25 of the Federal Rules of Civil Procedure, Stephen Richards has been substituted for his predecessor, Karla Pierce.

Mark S. Gunnison, Stephen D. McGiffert, Payne & Jones, Chtd., Overland Park, KS, John R. Shordike, Patricia Prochaska, Berkeley, CA, Paul Alexander, Alexander & Karshmer, Washington, DC, James W. Merz, Merz & Stacy, Oklahoma City, OK, Charley L. Laman, Topeka, KS, for Plaintiffs.

John Michael Hale, KS Dept. of Revenue, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant's Motion for Order Dissolving Injunction (Doc. 124). The Sac and Fox Nation of Missouri; the Iowa Tribe of Kansas and Nebraska; and the Kickapoo Tribe of Indians, of the Kickapoo Reservation in Kansas ("Tribes") have collectively filed a Response (Doc. 127), and defendant has filed a Reply (Doc. 128). On August 17, 2001, the court entertained the parties' oral arguments on the motion, and the court is now prepared to rule. After consideration of the parties' respective filings and the arguments of counsel, defendant's motion will hereby be granted.

## I. BACKGROUND

### A. Factual History

This case ostensibly arises out of a controversy involving the state of Kansas's attempt to collect a motor fuel tax on distributions made to retail gasoline stations on Tribal lands within Kansas. The court is well versed in the factual history of this case and a full recitation of the facts is unwarranted for disposition of the pending motion. In short, the factual history has been summarized as follows:

> The facts underlying this case are not in dispute. The Tribes are the beneficial owners of trust lands within the State of Kansas. The United States holds legal title to the lands in trust for the benefit of the Tribes. Each of the Tribes own and operate retail gasoline stations on these lands. The stations are located along or near Kansas state highways. Prior to May 1995, the Kansas Department of Revenue took the position that the motor fuel tax law as written did not permit the State to tax motor fuel distributed on Indian lands. After the Kansas legislature amended the Kansas Motor Fuel Tax Act in 1995, *see* Kan. Stat. Ann. §§ 79–3401 to 79–3464f (1997), however, the department reversed its position and this litigation ensued.

*Sac and Fox Nation v. Pierce*, 213 F.3d 566, 569 (10th Cir.2000).

### B. Procedural History

On December 17, 1998, the court issued a Memorandum and Order (Doc. 100) finding the tax invalid and granting the Tribes' motion for summary judgment. The court's order permanently enjoined the state of Kansas from enforcing the tax in all transactions involving the plaintiffs. *Sac and Fox Nation v. Lafaver*, 31 F.Supp.2d 1298 (D.Kan.1998). Defendant appealed the court's order, and on May 30, 2000, the Tenth Circuit Court of Appeals reversed and remanded the case. *Sac and Fox Nation v. Pierce*, 213 F.3d at 566, 586 (10th Cir.2000).

The instant motion presents a narrow question: whether this court's injunction

should be lifted in light of the Tenth Circuit's opinion.

## II. DISCUSSION

### A. District Court Order

This court found justifications under both state and federal law for granting the injunction. The state law at issue exempted from taxation fuel sales or deliveries to "any other state or territory or any foreign country." Kan. Stat. Ann. § 79–3408(d)(1). The court held, pursuant to the Act for Admission of Kansas Into the Union and the Organic Act, that Tribal lands were "foreign countries" as used in the state law, so fuel sales to retailers on Tribal lands were exempt.

As an alternative holding, the court also found that the tax was impermissible under federal law. The court employed a two-part analysis based on *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995). First, the court determined the incidence of this tax fell on non-Tribal members, namely the fuel distributors responsible for paying the tax. Because the tax fell on non-Tribal members, the court continued to the second step: balancing the interests of the state in imposing the tax versus the Tribes' interest in being free from state taxation. The court found that because the state tax would necessarily reduce the Tribes' revenue generated from motor fuel sales, and considering the small amount of state revenue forecasted to be generated by the tax, the impact to the Tribes was greater than the state's interest in collecting the tax. Therefore, under either the state or federal rationale, the court imposed the injunction.

### B. Tenth Circuit Opinion

As to the state law rationale, the Tenth Circuit reversed the court's determination. *Sac and Fox Nation*, 213 F.3d at 576. The Tenth Circuit found that the court misconstrued Kansas's Act for Admission. *Id.* Relying on a 1863 circuit court opinion, the Tenth Circuit found that the Act for Admission excludes from the boundaries of the state of Kansas only those lands, which Indian Tribes reserved unto themselves "by treaty" with the United States. *Id.* The Tribes have never produced a treaty purporting to reserve their land in Kansas.

Additionally, the Tenth Circuit concluded that the Kansas Supreme Court had already resolved this issue in *Kaul v. State Dep't of Revenue*, 266 Kan. 464, 970 P.2d 60, 66–67 (1998) ("the exemption from taxation provided by K.S.A. § 79–3408(d)(1) did not apply to the retailers because Indian reservations within the boundaries of the State are not included as territories outside the boundaries of Kansas"). According to the Tenth Circuit, therefore, "neither the Act for Admission of Kansas into the Union, nor the statutory exemption contained in § 79–3408(d)(1), lends any support to the Tribes' challenge to the Kansas motor fuel tax law." *Sac and Fox Nation*, 213 F.3d at 577.

The Tenth Circuit next considered the court's conclusions regarding federal law. *Id.* at 577–85. First, the Tenth Circuit agreed that the legal incidence of the motor fuel tax falls on non-Tribal members. *Id.* at 578. Therefore, the Tenth Circuit continued to the second phase of the analysis. Here, however, the Tenth Circuit disagreed with the court. In particular, the Tenth Circuit found that the court improperly considered certain evidence in weighing the competing interests of the state and the Tribes. *Id.* at 583. This court's decision in finding the Tribes' interest was greater was primarily based on economics, *i.e.*, the tax would reduce the Tribes competitive advantage; thereby reducing its revenues. *Sac and Fox Nation*, 31 F.Supp.2d at 1307. Relying on *Washington v. Confederated Tribes of the Colville*

*Indian Reservation,* 447 U.S. 134, 154–59, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980), the Tenth Circuit stated the Tribes have no right to a competitive advantage, which enables them to sell motor fuel to the general public at a reduced price. *Sac and Fox Nation,* 213 F.3d at 584–85. Although the tax may reduce, or eliminate all together, the Tribes' commerce with surrounding non-members, the tax is not invalid because the impacted market was created only because of the Tribes' claim to exemption. *Id.* at 585. This court erred, therefore, in considering the impact the tax would have on the Tribes general motor fuel retail sales and/or revenue.

The Tenth Circuit noted, however, that the Tribes do have an interest in raising revenues to support services for their members. *Id.* This interest is greatest when the revenues are derived from value generated on the reservation by activities involving Tribe members. *Id.* The Tenth Circuit left open the possibility that the facts may weigh in favor of the Tribes "if a substantial portion of the Tribes' retail fuel sales are to Tribal members." *Id.* at 584. However, the parties did not produce any statistics reflecting who in fact is purchasing the motor fuel; members or non-members. Therefore, the Tenth Circuit remanded so the Tribes could introduce such evidence. *Id.* at 585. The Tenth Circuit made clear that on remand the Tribes must demonstrate that the tax is a burden on commerce derived from value generated on Tribal lands. *Id.*

### C. Viability of the Injunction

 Defendant asserts the injunction must be lifted while the case proceeds to a disposition per the remand. On the other hand, the Tribes argue the Tenth Circuit intended for the injunction to remain in place while they undertake the necessary fact-finding. The court is persuaded to dissolve the injunction. First, while the parties focus the mass of their arguments on the injunction, it must be remembered that the Tenth Circuit was in part reviewing this court's grant of summary judgment. *Id.* at 583 ("We review the grant of summary judgment de novo. We conclude the district court overlooked the dictates of Supreme Court precedent and thus failed to adequately develop the factual record before balancing the parties' respective interests.") (internal citation omitted). A reversal and remand of a decision granting summary judgment must necessarily allow the proceedings to continue without imposition of the remedy granted by summary judgment.

Second, while the appellate opinion makes no direct reference to the injunction's viability during remand, the court is convinced that the injunction must cease in light of the burden imposed by the Tenth Circuit. Since the imposition of the temporary restraining order in this case, the Tribes have consistently argued that the tax's general negative economic impact compelled the court to find the tax invalid. With the Tenth Circuit's opinion, this rationale is critically compromised. The burden is now on the Tribes to refine this justification by demonstrating that the tax specifically impairs commerce, which is internally derived. Stated simply, to have a chance for success within the *Chickasaw Nation* balancing test, the Tribes must show that a "substantial portion" of their retail fuel sales are to Tribal members.[2] With an outstanding burden so clearly

2. The court cautions the parties that such a bare statistical showing does not represent an automatic decision in the Tribes' favor, for the court must still weigh this interest within the tripartite of competing interests. Additionally, even if the tax survives *Chickasaw Nation's* balancing test, the court must still consider its validity as applied to motor fuel sales to Tribal members. *See Sac and Fox Nation,* 213 F.3d at 585 n. 16.

resting upon the Tribes' shoulders, the court is unwilling to continue enjoining the state from collecting its tax. Therefore, the permanent injunction ordered by this court shall be dissolved.

**IT IS THEREFORE BY THIS COURT ORDERED** that defendant's Motion for Order Dissolving Injunction (Doc. 124) is granted. The permanent injunction ordered by this court enjoining the state of Kansas from collecting taxes from distributors on the sale of motor-vehicle fuel in all transactions involving the federally recognized Indian Tribes who are plaintiffs in this action is hereby vacated and dissolved.